**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SCOTT NJOS,** | : | **CIVIL NO. 3:14-CV-766** |
| | : | |
| **Petitioner,** | : | **(Judge Kosik)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **WARDEN THOMAS,** | : | |
| | : | |
| **Respondent.** | : | |

**<u>REPORT AND RECOMMENDATION</u>[1]**

I. **<u>Statement of Facts and of the Case</u>**

Scott Njos is a federal inmate housed at the United States Penitentiary,

Lewisburg, where he is currently serving an 170-month sentence imposed by the

United Sates District Court for the Northern District of Illinois following his

conviction on bank robbery, Hobbs Act robbery, escape, and assault on a federal

officer charges.  As part of this sentence the district court recommended that Njos

receive drug and mental health treatment, and this recommendation lies at the heart

---

[1]The parties are advised that, pursuant to 28 U.S.C. § 636, the district court
has orally referred the above-captioned case to the undersigned for pre-trial
management, resolution of non-dispositive motions, and preparation of reports and
recommendations on potentially dispositive matters.

of the instant federal habeas corpus petition.  Njos is currently projected for release on October 16, 2020.

While in federal custody, Njos has amassed an extensive disciplinary history, having been cited on dozens of occasions with prison rules infractions, many of which involved escape attempts, threats, violence and  disruptive behavior by Njos in an institutional setting.  This history of recidivism and on-going institutional misconduct led to the reassignment of Njos to the Special Management Unit of the United States Penitentiary, Lewisburg, where the plaintiff currently resides.

Njos is also a prolific litigator in federal court.[2]  Much of this litigation involves Njos' recurring complaints regarding the medical care and treatment which he receives at the Lewisburg Penitentiary.  The instant case is but one example of this growing body of litigation brought by Njos.

In this case Njos initially filed a 223-page petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  (Doc. 1.)  Njos also sought permission to supplement this voluminous pleading with an additional 26 page document, (Doc. 25.), a request which we granted.  This petition, supplemental  pleading, and government response

---

[2]See e.g., Njos v. Bledsoe, 3:12-CV-243; Njos v. Bledsoe, 3:12-CV-476; Njos v. Thomas, 3:13-CV-2721; Njos v. Thomas, 3:13-CV-2816; Njos v. Thomas, 3:14-CV-766; Njos v. Bureau of Prisons, 3:12-CV-1251; Njos v. Kane, 3:12-CV-1252; Njos v. Carney, 3:12-CV-1375; Njos v. United States, 3:15-CV-1960; Njos v. Thomas, 3:14-CV-875.

detailed Njos' mental health history and described at length his extraordinary record of institutional misconduct.  (Id.)  The petition further noted that at the time of his most recent federal convictions, the sentencing judge recommended that Njos should participate in comprehensive drug abuse and mental health treatment programs.  (Id.) While the exhibits attached to his federal habeas corpus petition revealed that he has been seen and treated on numerous occasions by Health Services and Psychology Services staff during his incarceration at Lewisburg, Njos was plainly displeased with the current conditions of his confinement, and with the type of care and treatment afforded to him.  Therefore, despite the fact that these very issues were the subject of a number of pending civil lawsuits filed by Njos, the petitioner sought to use a petition for writ of habeas corpus to challenge the level of medical care he receives, the very fact of his placement in the Lewisburg Penitentiary, and the lawfulness of his sentence in light of what he perceived to be insufficient mental health care afforded to him.  (Doc. 1.)

Upon a review of Njos' initial petition, we recommended that the district court should decline this invitation to entertain these matters through a petition for writ of habeas corpus.  We reached this recommendation for two reasons.  First, we construed Njos' petition as primarily complaining about the conditions of his confinement, a matter which falls outside the habeas corpus jurisdiction of this Court.

Second, to the extent that Njos was making a claim under 28 U.S.C. §2241 that prison officials had failed to properly execute his sentence through their provision of health care to Njos in accordance with the Court's recommendation, we believed that the evidence showed that Njos was receiving adequate, on-going mental health treatment in accordance with the sentencing judge's recommendation. (Doc. 38.)

The district court declined to adopt this recommendation, finding that Njos' petition solely raised issues relating to the execution of his sentence, and remanded this case to us for further proceedings. (Docs. 43-44.) As part of those proceedings, we directed Njos to file a single, revised and comprehensive habeas corpus petition. (Doc. 56.) Njos responded to this direction by filing a 236 page petition. (Doc. 57.) The respondents, in turn, have filed a 174 page response to the petition. (Doc. 60.) Thus, taken together the parties have submitted nearly 700 pages of material relating to Njos' medically-based habeas corpus petition claims.

A review of these materials reveals the following fundamental facts.

First, consideration of Njos' prayer for relief reveals that he is now asking this Court to declare the sentence of another federal court unlawful, and modify and reduce the sentence imposed by another judge. This is a task which, in our view, should only be undertaken by the court which actually sentenced Njos. That court

alone should be entitled in the first instance to construe the meaning of its sentencing recommendation and determine the lawfulness of its sentence.

Second, the extensive documentation submitted by the parties reveals that much of Njos' current perceived dilemma is a direct consequence of an unrelenting history of institutional misconduct at several other federal prisons.  This misconduct has included assaultive, violent behavior, possession of contraband and attempted escape, and entails multiple infractions of institutional rules.

Njos was first designated to United States Penitentiary Hazelton and arrived there on May 7, 2008.  While housed at Hazelton, Njos was placed in the Special Housing Unit (SHU), pending an investigation by prison authorities.  While that investigation concluded there was a threat to Njos's safety if he were to be placed back into the general population at Hazelton, he was transferred to the United States Penitentiary Victorville on September 17, 2008.

Njos has an extensive discipline history, which commenced while confined in jail awaiting sentencing prior to being designated to any federal facility.  While incarcerated Njos has been cited on numerous occasions for insolence, refusing orders, interfering with security devices, threatening bodily harm, disruptive conduct and assault.  This pattern of misconduct continued while Njos was housed at the United States Penitentiary Victorville.  His disciplinary history there included

multiple citations for threatening bodily harm, refusing orders, assault, possession of a weapon, possession of a hazardous tool, escape attempt, possession of drugs/alcohol, and setting a fire.

As a result of these on-going and severe disciplinary problems, on September 2009, Njos was submitted for a transfer to the Special Management Unit (SMU) at the Lewisburg Penitentiary or to FCI Talladega.  The rationale for the referral was that Njos demonstrated poor institutional adjustment while at Victorville, having accumulated 11 incident reports at the time of the referral.  Particularly troubling were Njos threats to staff and escape attempts.  The assaults and threats involved Njos spitting on staff while attempting to strike them with his fists and threatening to kill a staff member.  In addition, Njos attempted to escape from the Special Housing Unit (SHU) by cutting the bar of the cell window with a piece of hardened steel he removed from the shower drain.  Njos also cut around the edge of the ventilation duct in an attempt to escape through the ventilation system.  Furthermore, prison officials reported that Njos was implicated in a particularly violent and elaborate escape attempt.  As part of this plot, Njos planned to ingest pills in an effort to be taken to the hospital.  There, he intended to surprise and overpower the officers, take their weapons and shoot them to effect his escape.

In November 2009, the Hearing Officer concluded that the referral to the Lewisburg Penitentiary's Special Management Unit (SMU) was appropriate, noting the seriousness of the numerous disciplinary infractions committed by Njos.  Njos arrived at Lewisburg on October 18, 2010, to participate in the SMU program.  While housed at Lewisburg Njos has persisted in violating prison rules.  Thus, his disciplinary history at Lewisburg includes numerous incident reports for interfering with security devices; possession of gambling paraphernalia; phone abuse; threatening bodily harm; possession of a dangerous weapon; possession of drugs/alcohol; disruptive conduct-high; assault; mail abuse; refusing orders; extortion; destruction of property.

In sum, the undisputed evidence discloses that Scott Njos, by his conduct, has compelled the current place of his confinement.

The uncontested documentary record also discloses that Njos has received on-going mental health assessments, care, treatment and evaluations while in custody and at the Lewisburg Penitentiary.  As we have noted, Njos first came into the custody of the Bureau of Prisons on May 7, 2008.  Prior to his designation into federal custody the Bureau of Prisons Office of Medical Designation and Transfer (OMDT) reviewed his designation.  The mission of OMDT is to effect the timely and efficient designation and movement of inmates with health care needs.  The OMDT determines

which locations possess the required health care resources while meeting the community standard of medical care.  When making this determination, the OMDT necessarily considers both the mental health needs of the inmate along with an appropriate security assignment for the prisoner.

In Njos' case this task was complex because much of Njos' institutional misconduct entailed efforts to manipulate the prison system through claims of mental or physical illness.  For example, a Forensic Psychology Evaluation performed in 2007, indicated, in part, that Njos feigned having seizures while housed at a County Jail.  His physical presentation contrasted true symptoms of a seizure.  Further, he was lucid and responded to commands without impairment.  A review of prison video showed he hit his head on the cell wall several times before laying down on the floor. It was noted that no seizure activity had been observed while he was housed at the Metropolitan Correctional Center Chicago (MCC Chicago) during his forensic evaluation.  During his evaluation, Njos admitted a history of setting fires and multiple hospitalizations.  Based on his statements the evaluator concluded that Njos's interactions with mental health professionals as a juvenile were due to a conduct disorder which was manifested by frequent manipulative behavior..

Njos has long taken a different view of his mental health issues and needs reporting that he has a history of serious mental illness, including multiple personality

8

disorder, obsessive compulsive disorder, schizophrenia, impulse control disorder, and hallucinogenic disorder.   Njos is currently classified by prison mental health professionals as a "Mental Health Care Level One" inmate.   According to the Bureau of Prisons Program Statement 5310.16, Treatment and Care of Inmates with Mental Illness, this classification indicates:   An inmate who shows no significant level of functional impairment associated with a mental illness and demonstrates no need for regular mental health interventions; and either has no history of serious functional impairment due to mental illness, or if a history of mental illness is present, the inmate has consistently demonstrated appropriate help-seeking behavior in response to any re-emergence of symptoms.

It is also uncontested that Njos receives on-going mental health treatment while at Lewisburg, although records of this treatment reveal a fundamental disagreement between Njos and his care-givers regarding the nature and extent of his mental and emotional impairments.   For example, on April 21, 2015, Dr. Sage performed an 18 month restrictive housing evaluation of Njos.   At that time, she noted a diagnosis of malingering.   According to the DSM-5 "The essential feature of malingering is the intentional production of false or grossly exaggerated physician or psychological symptoms, motivated by external incentives…".   This professional diagnosis stands in stark contrast to Njos' claims that he suffers from multiple psychoses.

9

Dr. Sage also observed in the evaluation that over the prior year Njos had been offered services both through a psychologist assigned to him, and a treatment specialist.   Njos' participation in this recommended treatment has been minimal. Instead, according to the doctor, Njos used the treatment service time offered to him to pursue other objectives and often refused to complete treatment tasks and assignments.   Prison mental health professionals have also noted that throughout his contact with various departments Njos displayed a marked discrepancy between his claimed level of disability from mental health concerns, and the objective findings and observations from psychology staff.   For example, one of Njos' consistent complaints is an inability to concentrate, yet, despite this subjective complaint, Njos is a prodigious litigator, who completes multiple legal briefs and requests to staff members on a weekly basis.

Finally, notwithstanding this disagreement regarding Njos' diagnosis, prison officials continue to provide Njos regular access to mental health services at Lewisburg, and Dr. Sage has attested that she believes his needs are and can continue to be appropriately addressed at this facility.

Given these extensive and on-going treatment efforts, we find that the nature and extent of the care provided to Njos appears to fulfill the sentencing judge's recommendation that Njos receive mental health treatment while in prison.

10

Further, as for this care and treatment, these treatment records reveal a fundamental disagreement between Njos and his care-givers regarding the nature and extent of his mental and emotional impairments. For his part, Njos contends that he suffers from multiple psychoses, and insists that he should be able to dictate the time, place and type of care he receives. In contrast, prison mental health professionals diagnose Njos as a malingerer with an anti-social personality disorder who indulges in manipulative behaviors. Thus, Njos' petition, while cast as a effort to enforce the sentencing court's recommendation, inevitably invites us to use the Court's habeas corpus jurisdiction to mediate a medical dispute between an inmate and his mental health care providers regarding the proper diagnosis and treatment of his ailments. This is a task which typically fall far beyond the Court's duties and responsibilities when exercising its federal habeas corpus jurisdiction.

Upon consideration of these voluminous submissions, for the reasons set forth below, our review of this case leaves us convinced that this matter is not appropriately brought before this Court as a habeas petition under 28 U.S.C. § 2241. Therefore, we recommend that this petition be either transferred to the Northern District of Illinois, or denied.

II.   **Discussion**

A.   **This Petition Should Be Transferred to the Sentencing Court**

At the outset, we note that Njos' revised habeas corpus petition seeks a declaration that his current sentence is illegal and a reduction of his sentence.  This is relief that typically must be sought from the sentencing court pursuant to a motion to correct sentence pursuant to 28 U.S.C. §2255, and in this case we find that the petitioner has not made out a valid case for pursuing habeas relief in this district in lieu of a motion to correct sentence filed in the district of conviction under 28 U.S.C. § 2255.  This showing is a prerequisite for a successful habeas petition in this particular factual context.  Therefore, since the petitioner has not made a showing justifying habeas relief at this time, this petition is subject to summary dismissal pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts.  28 U.S.C. § 2254 (Rule 4 applies to § 2241 petitions under Rule 1(b) of the Rules Governing Section 2254 Cases in the United States District Courts).  See, e.g., Patton v. Fenton, 491 F. Supp. 156, 158-59 (M.D. Pa. 1979) (explaining that Rule 4 is "applicable to Section 2241 petitions through Rule 1(b)").

Rule 4 provides in pertinent part:  "If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court,

the judge must dismiss the petition and direct the clerk to notify the petitioner." Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts. Summary dismissal of this habeas petition, which seeks to correct a federal prisoner's sentence, is appropriate here since it is well-settled that: "[T]he usual avenue for federal prisoners seeking to challenge the legality of their confinement," including a challenge to the validity of a sentence, is by way of a motion filed under 28 U.S.C. § 2255. In re Dorsainvil, 119 F.3d 245, 249 (3d Cir. 1997). See also United States v. Miller, 197 F.3d 644, 648 n.2 (3d Cir. 1999) (stating that § 2255 provides federal prisoners a means by which to bring collateral attacks challenging the validity of their judgment and sentence); Snead v. Warden, F.C.I. Allenwood, 110 F. Supp. 2d 350, 352 (M.D. Pa. 2000) (finding that challenges to a federal sentence should be brought in a motion filed under 28 U.S.C. § 2255). Indeed, it is now clearly established that Section 2255 specifically provides the remedy to federally-sentenced prisoners that is the equivalent to the relief historically available under the habeas writ. See Hill v. United States, 368 U.S. 424, 427 (1962) (stating, "it conclusively appears from the historic context in which § 2255 was enacted that the legislation was intended simply to provide in the sentencing court a remedy exactly commensurate with that which had previously been available by habeas corpus in the court of the district where the prisoner was confined").

Therefore, as a general rule, a § 2255 motion "supersedes habeas corpus and provides the exclusive remedy" to one in custody pursuant to a federal court conviction.  Strollo v. Alldredge, 463 F.2d 1194, 1195 (3d Cir. 1972).  Indeed it is clear that "Section 2241 'is not an additional, alternative or supplemental remedy to 28 U.S.C. § 2255.'"  Gomez v. Miner, No. 3:CV-06-1552, 2006 WL 2471586, at *1 (M.D. Pa. Aug. 24, 2006) (quoting Myers v. Booker, 232 F.3d 902 (10th Cir. 2000)) Instead, Section 2255 motions are now the exclusive means by which a federal prisoner can challenge a conviction or sentence that allegedly is in violation of the Constitution or federal laws or that is otherwise subject to collateral attack.  See Davis v. United States, 417 U.S. 333, 343 (1974).  Thus, federal inmates who wish to challenge the lawfulness of their sentences must typically file motions with the sentencing court  under § 2255.

This general rule admits of only one, narrowly-tailored, exception, albeit an exception that has no application in these circumstances.  A defendant is permitted to pursue relief under 28 U.S.C. § 2241 only where he shows that the remedy under § 2255 would be "inadequate or ineffective to test the legality of his detention."  28 U.S.C. § 2255(e); see also United States v. Brooks, 230 F.3d 643, 647 (3d Cir. 2000) (recognizing availability of § 2241 in cases where petitioners have no other means of having claims heard).  The inadequacy or ineffectiveness must be "a limitation of

14

scope or procedure . . . prevent[ing] a § 2255 proceeding from affording . . . a full hearing and adjudication of [a] wrongful detention claim." <u>Okereke v. United States</u>, 307 F.3d 120 (3d Cir. 2002) (citing <u>Cradle v. United States</u>, 290 F.3d 536, 538 (3d Cir. 2002) (per curiam)). "It is the inefficacy of the remedy, not the personal inability to use it, that is determinative." <u>Cradle</u>, 290 F.3d at 538-39 (citing <u>Garris v. Lindsay</u>, 794 F.2d 722, 727 (D.C. Cir. 1986)). Accordingly, "[s]ection 2255 is not inadequate or ineffective merely because the sentencing court does not grant relief, the one-year statute of limitations has expired, or the petitioner is unable to meet the stringent gatekeeping requirements of the amended § 2255." <u>Cradle</u>, 290 F.3d at 539. Furthermore, if a petitioner improperly challenges a federal conviction or sentence under § 2241, the petition must be dismissed for lack of jurisdiction. <u>Application of Galante</u>, 437 F.2d 1164, 1165 (3d Cir. 1971).

In this case, the representations that the petitioner makes in his petition simply do not demonstrate that he is entitled to resort to seeking habeas relief under 28 U.S.C. § 2241 on the grounds that a motion under 28 U.S.C. § 2255 would be ineffective or inadequate. None of the petitioner's claims fall within the narrow exception outlined in <u>Dorsainvil</u>, in which § 2241 relief could be available in lieu of a motion under 28 U.S.C. §2255. In <u>Dorsainvil</u>, the Third Circuit held that § 2241 relief was available only in very narrow instances to a petitioner who had no earlier

opportunity to challenge his conviction for conduct that an intervening change in substantive law made no longer criminal.  <u>Dorsainvil</u>, 119 F.3d at 251.  Thus, to pursue a claim under §2241 one must, in essence, present an assertion of actual innocence due to an intervening change in the law.

Recognizing that Njos is not entitled to request that this court vacate the sentence imposed by the District Court in the Northern District of Illinois through a petition brought under §2241, we acknowledge that the petition could be dismissed. In the alternative, the petition could be transferred to the Northern District of Illinois, so the sentencing district court may consider this petition.  Federal habeas corpus proceedings are essentially civil proceedings, and as such are governed by the statutes and rules which apply generally to civil litigation.  Thus, such petitions are also subject to the general rules governing venue in civil litigation, including Title 28 U.S.C. § 1404(a), which states as follows:  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district of division where it might have been brought."

Adhering to this familiar principle, we note that when courts in this district have been confronted by habeas petitions, like the petition lodged here, which challenge aspects of a sentence imposed by another federal district court, they have

often relied upon §1404 to order the transfer of the petition to the sentencing court

for its consideration.  In reaching this result we have observed that:

> The Court may apply "traditional venue considerations," including
> convenience to the parties, where material events took place, and where
> records and witnesses pertinent to a petitioner's claim may be found, to
> habeas cases.  Braden v. 30th Judicial Circuit Court, 410 U.S. 484, 493-
> 94, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973).  Indeed, this Court has
> followed this course of action in other cases where an inquiry into the
> sentencing court's intent was necessary to properly dispose of a petition.
> . . . . See Argentina v. Sniezek, Civil No. 4:09-CV-0382, 2010 WL
> 2632561, at *2 (M.D.Pa. Jun.28, 2010) (Jones, J.); Gardner v.
> Williamson, Civil No. 3:07-CV-1788, 2008 WL 1752229, at *4
> (M.D.Pa. April 14, 2008) (Munley, J.) (citing Verissimo v. INS, 204
> F.Supp.2d 818, 820 (D.N.J.2002) (finding that "a habeas petition may
> be transferred to the district court of the state in which the petitioner was
> sentenced and convicted, even if the petitioner was transferred to prison
> in a different state."); Wilkins v. Erickson, 484 F.2d 969, 973 (8th
> Cir.1973) (allowing transfer of habeas corpus case from the District of
> South Dakota to the District of Montana because "Montana, the state of
> conviction and sentencing, is the most convenient forum because of the
> availability of witnesses and records.").).

Stover v. Sniezek, No. 1:10-CV-1213,  2010 WL 3220318, *4 (M.D.Pa. Aug. 12

2010)(Jones, J.); see, e.g., See Argentina v. Sniezek, Civil No. 4:09-CV-0382, 2010

WL 2632561,  *2 (M.D.Pa. Jun.28, 2010) (Jones, J.); Gardner v. Williamson, Civil

No. 3:07-CV-1788, 2008 WL 1752229, *4 (M.D.Pa. April 14, 2008) (Munley, J.).

Indeed, we note that such transfers have been routinely granted by the courts, when

the interests of justice favor such a transfer.  See e.g., Garner v. Warden, FCI

Schuylkill, No. 1:15-CV-0130, 2015 WL 539840, at *1 (M.D. Pa. Feb. 10, 2015);

Brawner v. Thomas, No. 1:14-CV-01489, 2014 WL 7139826, at *3 (M.D. Pa. Dec. 12, 2014); Potocki v. Thomas, No. CIV.A. 3:14-0906, 2014 WL 2214283, at *2 (M.D. Pa. May 28, 2014). In our view this principle applies with particular force here, where Njos is inviting us to determine whether the Bureau of Prisons' conduct violates the sentencing recommendation of another judge, in another court. Plainly, the court best suited to make that determination is the court which actually sentenced Njos. That court is uniquely poised in the first instance to construe the meaning of its sentencing recommendation and under the law must be given the first opportunity to determine the lawfulness of its own sentence.

In this case, we conclude the prerequisites for a transfer of this matter to the Northern District of Illinois pursuant to 28 U.S.C. §1404 are satisfied. At the outset, it seems that the United States District Court for the Northern District of Illinois is another district where these claim might have been brought through a motion under 28 U.S.C. §2255. Therefore, venue over these claims lies in that district. Indeed, that district is the most appropriate venue for this particular challenge to this conviction and sentence since it is the court where this case was originally tried, and the court whose sentence lies at the heart of this petition. In fact, it would be both improper and presumptuous for this Court to purport to interpret the meaning and intention of the sentencing court's recommendation. Moreover, even if Njos were to dispute that

venue lies over this particular matter in the district of his conviction under §2255, we have been counseled by the court of appeals that: "We need not, however, be overly concerned with the limitations on transfer in section 1404(a), as we believe that there is at least a plausible argument that if [Njos] has no other remedy in the district of his conviction and sentencing, the Court of Appeals . . .  would approve of the district court's exercising jurisdiction under the All–Writs Act, 28 U.S.C. § 1651(a) to grant him a writ of error coram nobis.  See United States v. Shamy, 886 F.2d 743 (4th Cir.1989); United States v. Mandel, 862 F.2d 1067 (4th Cir.1988)." In re Nwanze, 242 F.3d 521, 526 (3d Cir. 2001).

It is also evident that the second prerequisite for a transfer order is present here: A transfer of this action to the Northern District of Illinois would serve:  "the convenience of parties and witnesses, [and] the interest of justice." 28 U.S.C. §1404(a).  As we have previously noted when transferring other petitions to the sentencing district:

> Because the District Court . . . sentenced the petitioner, the events material to the case took place in that district.  In addition, the court in that district has access to the evidence that led the court to make its sentencing . . .determination and can best access any witnesses necessary to investigate the case. The interests of judicial efficiency and economy would best be served by transferring the case to the [sentencing court].

Gardner v. Williamson, supra,  2008 WL 1752229, at *4.

Indeed, allowing the sentencing court to interpret its own sentencing recommendation is the most just outcome in this case, an outcome which gives full fidelity to the true meaning of that sentencing recommendation.

Finally, we note that an order transferring this case to the sentencing district for further proceedings also protects the petitioner's rights as a *pro se* litigant. Such a transfer order avoids any unintended prejudice to the petitioner which might flow from a dismissal of this action. See Burnett v. New York Cent. R. Co., 380 U.S. 424, 430 (1965). Moreover, addressing the question of venue in this fashion would not constitute a ruling on the merits of the petitioner's claims, thus assuring that the petitioner can have his case heard on its merits in the most appropriate forum. See, 18 Wright, Miller & Cooper Federal Practice and Procedure, § 4436, at 338 (stating that "a dismissal for lack of jurisdiction or improper venue does not operate as an adjudication upon the merits") (footnote omitted).

In sum, Njos invites this Court under the guise of a habeas petition to do something which the sentencing court should do in the first instance, that is, consider setting set aside his conviction and sentence. We should decline this invitation, given that Njos has not shown that § 2255 is inadequate or ineffective to test the legality of his conviction, and that the remedy afforded under § 2241 is not an additional,

20

alternative, or supplemental remedy to that prescribed under § 2255.  Consequently, to the extent that Njos' primary prayer for relief entails a re-sentencing or declaration that his current sentence is illegal, this Court should either dismiss this petition or transfer this petition to the Northern District of Illinois pursuant to 28 U.S.C. § 1404, so that court may address these claims.

## B.    In The Alternative, Njos' Claim Fails on its Merits

Njos' petition also faces a second, more fundamental, flaw:  It fails when considered on its merits.  In this case, in addition to demanding a reduction in his sentence, Njos' federal habeas corpus petition also seeks to prescribe the place of his confinement, and the nature of his mental health care in prison.  Thus, Njos asserts that he is entitled to habeas corpus relief under §2241, because his complaints regarding these medical and mental health issues actually go to the "execution of his sentence" since his sentence included a recommendation that Njos should participate in comprehensive drug abuse and mental health treatment programs.  According to Njos, the current care and treatment he receives is so far inconsistent with this very general sentencing recommendation that he is entitled to challenge the conduct of the Bureau of Prisons through a habeas corpus petition as an improper execution of his sentence.

We disagree.  We acknowledge that this Court has limited federal habeas corpus jurisdiction to examine whether prison officials are properly executing the Court's sentence, but we do not believe that this narrow grant of jurisdiction is a license to substitute the inmate's preferences for the prerogatives of the Bureau of Prisons.  Rather, while " 'the precise meaning of "execution of the sentence" is hazy.' Woodall, 432 F.3d at 242."  Cardona v. Bledsoe, 681 F.3d 533, 536 (3d Cir. 2012), this Court has recognized that, in certain very limited circumstances a prisoner may bring a federal habeas corpus petition that touches upon the conditions of his confinement by arguing that those conditions fail to properly execute the Court's sentence.  See, McGee v. Martinez, 627 F.3d 933, 936–37 (3d Cir.2010); Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 241 (3d Cir.2005)  However, the Court has also repeatedly stressed the narrow scope of this ruling and cautioned that these limited holdings:  "do not suggest that contesting *any* express recommendation from the sentencing court will *necessarily* give rise to habeas jurisdiction under § 2241. There may be circumstances where an alleged discrepancy between a court's recommendation and the BOP's conduct do not give rise to a habeas claim." Cardona v. Bledsoe, 681 F.3d 533, 537 n. 7 (3d Cir. 2012).  Instead, to sustain a habeas corpus claim under §2241 based upon an alleged failure to proper execute a sentence, the petitioner must allege and prove "BOP conduct that conflicted with express

22

statements in the applicable sentencing judgment." Cardona v. Bledsoe, 681 F.3d 533, 536 (3d Cir. 2012). See Parks v. Holder, 508 F. App'x 93, 94 (3d Cir. 2013). Furthermore, it is clear that the BOP conduct which is alleged to have been inconsistent with an express sentencing recommendation must be much more than a mere "'garden variety' prison transfer" from another institution to the SMU. Oser v. Samuels, No. 3:12-CV-2535, 2013 WL 2351346, at *3 (M.D. Pa. May 22, 2013) aff'd, 537 F. App'x 38 (3d Cir. 2013). Simply put, such matters do not entitle an inmate to federal habeas corpus relief.

Indeed, the United States Court of Appeals for the Third Circuit has expressly rejected the type of habeas corpus claim advanced here by Njos, a claim premised upon the assertion that a transfer to the SMU "constituted an improper execution of his sentence because USP–Lewisburg does provide psychological services of the type recommended by the sentencing court." Brown v. Bledsoe, 405 F. App'x 575, 576 (3d Cir. 2011). In terms that are equally applicable here, the Court of Appeals rejected this claim as sounding in habeas, noting that the petitioner: "ha[d] not demonstrated that his transfer to USP–Lewisburg was anything other than a 'garden variety prison transfer,' which we have indicated does not give rise to a habeas claim. See Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 243 (3d Cir.2005)." Brown v. Bledsoe, 405 F. App'x 575, 577 (3d Cir. 2011).

23

The Court of Appeals has recently reaffirmed this basic tenet limiting federal habeas corpus jurisdiction in cases where Lewisburg inmates are seeking relief under §2241 because they are displeased with the nature and extent of their mental health care and treatment, observing that such claims are: "not properly brought under § 2241." Brown v. Warden Lewisburg USP, 623 F. App'x 587, 588 (3d Cir. 2015). Instead, such matters should typically be addressed through civil rights lawsuits, a path which Njos has, and is, actively pursuing. See Gillette v. Territory of Virgin Islands, 563 F. App'x 191, 194 (3d Cir.), cert. denied sub nom. Gillette v. Francois, 135 S. Ct. 753, 190 L. Ed. 2d 630 (2014). Furthermore, district courts have also held that inmate disputes with prison care-givers regarding their mental health care do not rise to the level of matters warranting habeas corpus relief simply because there was a sentencing recommendation for some type of care where there is "no 'quantum change' in the level of [the prisoner's] custody." Floyd v. Zickefoose, No. CIV. 11-3593 JBS, 2012 WL 664808, at *8 (D.N.J. Feb. 29, 2012).

Indeed, we have held as much in a case involving another Lewisburg inmate. In Koch v. Ebbert, the sentencing court recommended that Koch be housed in a "facility with a mental health facility or hospital." Koch v. Ebbert, 3:14-cv-1832, (M.D.Pa. 2014). The Office of Medical Designations and Transportation reviewed the judicial recommendation and determined Koch's needs could be met at a United

States Penitentiary, a facility that has mental health officials on staff.  (Id.) Like Njos, at the time of the decision, Koch was incarcerated at the Lewisburg Penitentiary, SMU.  In terms that are equally applicable here, this Court, in dismissing Koch's petition, found that the prison officials did not ignore the sentencing judge's recommendation, rather they "carefully assessed Koch's mental health needs, and concluded they could be met within a penitentiary setting."  Id. (Doc. 10 at 16).  The Court further found that the petitioner's history of violence, "would require that he remain in this type of highly secure setting even if he was transferred to some other prison.  Therefore, a prison transfer would not result in 'a quantum change' in the level of his custody."  Id.

These same principles apply here and compel denial of this petition.  On the undisputed facts set forth in the voluminous exhibits attached to this petition we submit that Njos has failed to demonstrate that this prison transfer constituted an improper execution of his sentence for several reasons.  First, a review of the voluminous materials filed by Njos and the respondents discloses that Njos has failed to demonstrate "that his transfer to USP–Lewisburg was anything other than a 'garden variety prison transfer,' which we have indicated does not give rise to a habeas claim.  See Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 243 (3d Cir.2005)."  Brown v. Bledsoe, 405 F. App'x 575, 577 (3d Cir. 2011).  Njos' criminal history and

unrelenting institutional misconduct will compel confinement in a maximum security regardless of where he is placed within the federal prison system. Thus, Njos will always receive mental health care in a highly secure, structured environment. This immutable fact is driven by Njos' own repeated misdeeds and is fatal to Njos' petition, since courts have frequently held in the past that this type of prison placement decision for a dangerous inmate who requires some mental health services not reflect government action justifying any form of habeas corpus relief. See e.g., Brown v. Warden Lewisburg USP, 623 F. App'x 587, 588 (3d Cir. 2015); Koch v. Ebbert, 3:14-cv-1832, (M.D.Pa. 2014); Floyd v. Zickefoose, No. CIV. 11-3593 JBS, 2012 WL 664808, at *8 (D.N.J. Feb. 29, 2012).

In addition, we find no inconsistency the district court's sentencing recommendation and the BOP's conduct in Njos' case. The records before us disclose that throughout his federal confinement prison officials have carefully assessed Njos' needs, and placed him in facilities where he has received care commensurate with what prison official view as his needs. This conduct by the Bureau of Prisons reveals no inconsistency between the sentencing recommendation and the way in which Njos' sentence has been executed. In this regard, at the time of his most recent federal convictions, the sentencing judge merely recommended in general terms that Njos should participate in comprehensive drug abuse and mental

health treatment programs. The nearly 700 pages of exhibits which Njos and respondents have tendered to the Court along with his petition reveal that he has, in fact, been seen and treated on numerous occasions by Health Services and Psychology Services staff during his incarceration at Lewisburg and elsewhere. Thus, the care Njos has received is consistent with the sentencing judge's general recommendation, and does not give rise to a valid claim that the Bureau of Prisons is improperly executing this sentence.

Instead, it is clear that the gist of Njos' complaint is reduced to a vehement dispute between this inmate and his care-givers regarding his mental health diagnosis and the nature of the treatment afforded to him. This precise issue is being litigated by Njos in numerous civil lawsuits. Therefore, to the extent that Njos' habeas corpus petition involves such a medical dispute, it is evident that this dispute does not sound in habeas, but must be addressed through other means. Indeed, it is well-settled that complaints about prison medical care simply do not sound in habeas. As the Court of Appeals has observed in summarily affirming the dismissal of a similar federal habeas petition:

> Federal habeas corpus relief is available only "where the deprivation of rights is such that it necessarily impacts the fact or length of detention." Leamer v. Fauver, 288 F.3d 532, 540 (3d Cir.2002). [the petitioner's] allegation of deficient medical care does not "spell speedier release," and thus does not lie at the " 'the core of habeas corpus.' " Wilkinson

27

v. Dotson, 544 U.S. 74, 82, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005) (quoting Preiser v. Rodriguez, 411 U.S. 475, 489, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973)). See also Leamer, 288 F.3d at 542–44. In seeking [specific medical care], he does not seek a speedier release, only different medical care, and he thus must proceed through a civil rights action after exhausting his administrative remedies, and either paying the civil action filing fee or completing an in forma pauperis application.

Bonadonna v. United States, 446 F. App'x 407, 409 (3d Cir. 2011).

Further, we note that Njos seeks an evidentiary hearing in this matter. (Doc. 72.) Such requests rest in the discretion of the Court, however, and may be denied when the undisputed evidence shows that a petitioner is not entitled to habeas corpus relief. Here we find that the primary relief sought by Njos, a declaration that his sentence is unlawful, and a reduced sentence, is relief which is beyond our power to provide. We further conclude that, given the scope of the care provided to Njos, as disclosed in his own voluminous filings, and the nature of the security concerns which Njos presents, as reflected in his institutional disciplinary history, Njos cannot make a case that he is entitled to habeas corpus relief. In such circumstances, the Court may in the exercise of its discretion decline to schedule a hearing on a petition.

Additionally, to the extent that Njos attempts to use this habeas corpus petition as a vehicle for seeking some form of declaratory judgment relief declaring the Bureau of Prisons' Inmate Security designation Policy unconstitutional, we should

decline this invitation. (Doc. 74.) This request for sweeping declaratory judgment relief is entirely inappropriate in this case, where Njos' claims are brought in the wrong court and lack substantive merit.

Finally, given our findings regarding the lack of merit to Njos' claims, and the necessity for the sentencing court addressing many of these claims which challenge the lawfulness of the sentence imposed here, Njos' request for a summary judgment in his favor should also be denied. (Doc. 80.)

### III. __Recommendation__

Accordingly, for the foregoing reasons, IT IS RECOMMENDED as follows:

1.   Upon consideration of this Petition for Writ of Habeas Corpus, IT IS RECOMMENDED that the Petition either be DENIED or transferred to the United States District Court for the Northern District of Illinois.

2.   Petitioner's motion for hearing, (Doc. 72.), motion for declaratory judgment, (Doc. 74.) and motion for summary judgment, (Doc. 80.) should be DENIED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the

disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 27th day of June 2016.

*S/Martin C. Carlson*

Martin C. Carlson

United States Magistrate Judge